707 So.2d 119 (1998)
STATE of Louisiana
v.
Ellis SPENCER.
No. 97-KA-811.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 1998.
Anthony G. Falterman, District Attorney, Convent, for Plaintiff/Appellee State.
Dale J. Petit, Indigent Defender, Hester, for Defendant/Appellant Ellis Spencer.
Before BOWES, DUFRESNE and GOTHARD, JJ.
BOWES, Judge.
Defendant, Ellis Spencer, appeals a jury verdict finding him guilty of the crime of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. We affirm.
Defendant was originally charged with illegal possession of stolen things in violation of R.S. 14:69; however, shortly before trial the bill of information was amended to charge him with unauthorized use. After re-arraignment, defendant entered a plea of not guilty and the case proceeded to trial. Following trial, the jury found the defendant guilty as charged. Following a pre-sentence investigation, defendant was sentenced to 10 years imprisonment at hard labor, with credit for time served.
On appeal, defendant urges that the verdict was contrary to the law and the evidence. We disagree and, therefore, affirm.
Included in this assignment of error is the contention that the state failed to prove the requisite criminal intent. Defendant also requests that we review the record for errors patent.

EVIDENCE AND TESTIMONY
Charles Pierce, a salesman at Pearl Motors in Mobile, Alabama, testified that in August of 1996, the defendant arrived at the dealership in a brand new vehicle, which the defendant indicated belonged to his wife. The defendant was looking at a Jeep Wagoneer, *120 and asked to test drive the vehicle, to which request Mr. Pierce agreed. The witness stated that the defendant wanted to show the vehicle to his wife, who worked "right up the street." Mr. Pierce gave him permission to do so, with the understanding that defendant would come right back. Upon leaving in the dealership's Jeep Wagoneer, the defendant left the vehicle in which he had arrived right in front of the dealership office. Mr. Pierce testified that at no time did he ever indicate to the defendant that he was giving him permission to take the vehicle for a twenty-four hour period of time, nor did he ever indicate to the defendant that he was giving him permission to take the vehicle out of the state. The witness testified that the defendant did not ask him for permission to do either of these things.
After the defendant failed to return the dealership's vehicle, Mr. Pierce looked inside the car in which the defendant had arrived for some identification in an attempt to locate the owner of that car. Mr. Pierce then spoke with the owner, who did not indicate that she was married to the defendant, and who told Mr. Pierce that the defendant did not have her permission to drive her car.
During cross-examination, Mr. Pierce testified that he had initially asked for the defendant's driver's license, but that the defendant told him that he did not have his license with him. Mr. Pierce then admitted that he, nevertheless, gave the defendant the keys to the vehicle with out requiring a driver's license. When questioned as to whether he had placed a time limit on how long the defendant could test drive the vehicle, Mr. Pierce again testified that the defendant had asked his permission only to drive "up the street" approximately two blocks away, where his wife worked, and that the defendant had said that he would come right back to the dealership after showing the Jeep Wagoneer to his wife.
Lieutenant Craig Poche of the St. James Parish Sheriff's Office testified that on August 27, 1996, while patrolling on Highway 44 at about 5:00-5:30 a.m., he passed a warehouse at St. James Stevedore and observed a vehicle parked in the driveway door with the parking lights on. On observing that the vehicle did not leave the driveway, he turned around and, passing back toward the warehouse, he saw the vehicle start to move in the direction of Highway 44. From his rear view mirror the officer continued to observe the vehicle, which did not enter the highway. Again the officer turned around, and at this time the vehicle began heading north on River Road; the officer pulled behind the car at which time he noticed that there was no license plate. Officer Poche then made a traffic stop.
Officer Poche ordered the defendant to exit the vehicle, informing him that it was a traffic violation to drive a vehicle without a license plate, and asked the defendant for his driver's license. When defendant told the officer that he did not have a license, Officer Poche asked the defendant for his name. According to the witness, while the defendant gave Spencer as his last name, he gave a first name other than "Ellis."
Officer Poche ran a license check with the name that the defendant had given him, but he was unable to verify that the defendant was ever issued a driver's license. The officer again asked defendant for his name, whereupon the defendant told him that his name was Ellis Spencer. The officer still could not verify that the defendant had been issued a driver's license and, therefore, was still unaware of the defendant's real identity. Officer Poche then asked defendant for any papers that would reflect his identity and for any paperwork on the vehicle. The defendant told Officer Poche that he had just purchased the vehicle from a dealership in Alabama, but the only papers which defendant could produce were a business card from the dealership and a warranty.
Thereafter, Officer Poche ran a check on the vehicle using the vehicle's Vehicle Identification Number, and found no record at that time reflecting that the vehicle was stolen. Nevertheless, the officer was suspicious because the defendant could not show him any verification of defendant's ownership of the vehicle and so he questioned the defendant further. Finally, he placed defendant under arrest for driving without a license plate and without a driver's license, inventoried the *121 vehicle's contents and had the vehicle towed to the sheriff's office.
The officer took the defendant to the prison and called Pearl Motors in Alabama, the name reflected on the business card that the defendant had in his possession. He spoke to Mr. Chuck O'Brien, who told him that the vehicle was taken by a Mr. Spencer for a test drive the day before, and was never returned. According to Officer Poche, Mr. O'Brien told him that the defendant had an argument with his girlfriend, then left his girlfriend's vehicle at the dealership and took the dealership's vehicle for a test drive.[1]
Officer Poche admitted on cross-examination that Mr. O'Brien did not tell him at that time how far the dealership's vehicle was supposed to be test driven by the defendant, but that Mr. O'Brien was shocked to learn that the officer was calling from Louisiana.
Detective William Jordan of the St. James Parish Sheriff's Office testified that in June of 1995, the defendant was parked in a vehicle partially on the road and partially on the shoulder when the officer investigated the situation. The defendant gave a phony name and had no driver's license; a computer check of the vehicle disclosed that the vehicle was stolen from Gulfport Mississippi.
The defense did not call any witnesses.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant claims that the evidence is in sufficient to support the verdict. He specifically claims that the state failed to prove that he had the requisite criminal intent to commit the crime of unauthorized use of a motor vehicle. He points to the testimony of Mr. Pierce, claiming that his testimony reflects that the defendant's actions were within the normal scope of a person interested in purchasing a new vehicle. Defendant urges that the state, therefore, did not prove that the defendant had the requisite criminal intent to commit the crime of unauthorized use of a motor vehicle.
While there are no reported cases under La. R.S. 14:68.4, we find the analyses of R.S. 14:68.4 to be applicable here.
A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent.
* * * * * *
R.S. 14:68 may be violated by a taking or use either without the consent of the owner or by means of fraudulent conduct, practices, or representations.
* * * * * *
... we construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the `evil' state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). State v. Bias, 400 So.2d 650, 652 (La.1981).
The state may produce direct or circumstantial evidence of "fraudulent intent" in unauthorized use cases. Bias, supra.
In the present case, the jury heard the testimony of Mr. Pierce that the defendant asked to test drive the vehicle for two blocks to show his wife, and that he told Pierce he would come right back. Pierce also testified that he did not give permission for defendant to keep the car for 24 hours or to take the vehicle out of state. There was testimony that the car was not returned to the dealership in Alabama, and that it was seized by the police the next day in Louisiana.
We find that there is sufficient evidence to meet the standards of review enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Rosiere, 488 So.2d 965, 968 (La.1986). It is the role of the fact-finder to weigh the respective credibilities of witnesses, and this *122 Court cannot and will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La. 1983).
It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. Rosiere, supra. Also State v. Sampson, 95-58 (La.App. 5 Cir. 5/30/95), 656 So.2d 1085, 1088, writ denied, 95-1665 (La.11/27/95), 663 So.2d 730.
A rational jury certainly could have concluded that the defendant, in the ordinary course of human experience, took the Jeep by means of fraudulent practices, without the consent of the owner, and must have considered the prescribed criminal consequences as reasonably certain to result from his failure to return the Jeep Wagoneer to the Alabama dealership. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found the essential element of general criminal intent beyond a reasonable doubt. Therefore, we find this assignment of error is without merit.

PATENT ERROR REVIEW
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983). In the present case, the trial judge failed to advise the defendant of the prescriptive period for post-conviction relief as mandated by La.C.Cr.P. art. 930.8(C). This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform a defendant of this prescriptive period at the time of sentencing. However, the failure to inform him is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to him within ten days after the rendition of this opinion and to file written proof in the record that he received such notice. State v. Crossley, 94-965 (La. App. 5 Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
Accordingly, the conviction is affirmed, but the case is remanded to the trial court and the trial judge is ordered to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice.
CONVICTION AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] On cross-examination, Poche testified that O'Brien referred to defendant's "wife" rather than his girlfriend as the owner of the vehicle in which defendant had arrived at the dealership.